## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

MAISO L. BRYANT,                    :
                                    :
          Plaintiff,                :
                                    :
     v.                             :     Civil Action No. 05-250 (GK)
                                    :
MICHAEL O. LEAVITT,                 :
                                    :
          Defendant.                :

---

## MEMORANDUM OPINION

Plaintiff, Maiso Bryant, a 62 year-old African-American male, brings this action against Defendant, Michael O. Leavitt,[1] Secretary of Health and Human Services. He alleges employment discrimination based on race and sex, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2 et seq., and on age, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 633a. This matter is before the Court on Defendant's Motion for Summary Judgment [Dkt. No. 33]. Upon consideration of the Motion, Opposition, Reply, and the entire record herein, and for the reasons stated below, Defendant's Motion for Summary Judgment is **granted in part** and **denied in part.**

---

[1] Defendant Leavitt is sued in his official capacity.

## I. BACKGROUND

### A. Facts[2]

Plaintiff Maiso Bryant, a 62 year-old African-American man, has been employed by the United States Department of Health and Human Services ("DHHS") for approximately thirty years.  He has held various positions with DHHS, and is currently serving as Associate Commissioner for Systems in the Administration for Children, Youth and Families ("ACYF"), a subunit of the Administration for Children and Families ("ACF").  He served as Director of the Office of Grants Management ("OGM") in ACF as a GS-15 supervisor from March 2001 until October 2002.  He was thereafter transferred from his position as Director to a position he characterizes as "unclassified" and which he claims involved the work of a GS-13 employee.  Plaintiff's claims arise out of this alleged temporary demotion.

The OGM administers the DHHS's $43 billion grants program. The Director of the OGM is responsible for overseeing all grant administration, management and awarding issues; providing legal and policy advice to program officials; and providing advice and

_____

[2] Pursuant to Local Civil Rule 7.1(h), "[i]n determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."  In this case, the Plaintiff's Opposition disputed several facts contained in Defendant's Statement of Material Facts Not in Dispute.  All such disputed facts are identified.

guidance to the Assistant Secretary of ACF.  In this position, Plaintiff was supervised by and reported to Carol Carter Walker, a 64 year-old African-American woman who was then Acting Deputy Assistant Secretary for Administration, ACF.  He supervised a staff of seven, including two Division Directors and five Grants Management Officers, who also had staff working under them.

In October 2002, Curtis Coy ("Coy"), a 54 year-old white male, replaced Carol Carter Walker as Deputy Assistant Secretary for Administration and became Plaintiff's immediate supervisor.  In December 2002, Plaintiff received from Ms. Carter Walker an overall performance evaluation of "Outstanding," the highest possible rating within the DHHS performance evaluation system at the time. That evaluation was based on his performance in a former position as Senior Grants Management Officer.  After that evaluation, Coy met with Plaintiff and informed him that his performance was not at the level Coy believed it "could or should be."

Plaintiff claims that Coy treated him like a child, yelled at him, and subjected him to unwarranted hostile treatment regarding his performance and management of OGM.  He claims that Coy made several demeaning comments about his age, including stating that he was "part of the older generation" and was "too old to have children in high school."  He further claims that Coy kept tabs on his whereabouts, and refused to provide him the requisite support staff to do his job.

For example, in early February 2003, Coy detailed Donnell Savage to OGM as Plaintiff's deputy. Plaintiff contends Coy assigned Ms. Savage to OGM in order to help Plaintiff manage his own office, which Coy claimed "was in need of management." Plaintiff was offended by the assignment, did not utilize Ms. Savage, and told her he did not see how she could help him. As a result, Ms. Savage was removed from her position at OGM in April 2003.

Plaintiff also claims that Coy refused to provide the requisite level of staffing during Plaintiff's term as Director of OGM, but did provide additional staffing under the management of Plaintiff's successor, an African-American woman two years older than he, and provided one additional staff member to a white employee. Plaintiff contends that he submitted written memoranda explaining that his office was understaffed and outlining his need for additional staff. Coy rebuffed all of these requests and provided no additional staff. When Plaintiff asked for an additional staff member to work on audit resolution, Coy instead assigned an audit resolution employee to Joel Anthony, a white male who was Director, Office of Financial Services. Plaintiff claims that during his directorship, only one vacancy announcement was posted. When Plaintiff was transferred to his unclassified position, however, Ms. Carter Walker took over his position as Director of OGM and the staff nearly doubled under her supervision.

-4-

In April 2003, Coy reassigned Plaintiff to a position as "grants officer" over the Capital Compassion Fund Program, part of the White House's faith-based initiative. Plaintiff contends his new position was one of "unclassified duties" in which he performed the work of a GS-13 Grants Management Specialist and was not permitted signature authority over the one grant he was assigned. His position as Director of OGM was, as noted earlier, given to Ms. Carter Walker.

In October 2003, Plaintiff was detailed to the Deputy Assistant Secretary's office and was named Associate Commissioner of Systems for ACYF. In November 2003, Plaintiff was permanently assigned to the Associate Commissioner for Systems position, which he characterizes as a non-supervisory position. Accordingly, Plaintiff claims that it took DHHS seven months -- from April to November 2003 -- to assign him to a GS-15 level position. Since May 2006, he has been the Acting Deputy Commissioner of ACYF. In this position, Plaintiff oversees two bureaus, each of which have a staff of 35-40 employees. Plaintiff admits that the position of Acting Deputy Commissioner is more prestigious than his earlier position as Director of OGM, and that the pay and grade level are the same. Def.'s Mot. Ex. 7 ("Bryant Depo.") at 14.

## B.   Procedural History

On August 28, 2003, Plaintiff filed a formal administrative Equal Employment Opportunity ("EEO") complaint of discrimination

with the agency.   By letter dated September 9, 2003, the agency accepted the complaint for investigation.[3]   Plaintiff filed his Complaint in this lawsuit on February 3, 2005.   On May 27, 2005, Plaintiff filed an Amended Complaint.

The Amended Complaint alleges employment discrimination based on race and sex, in violation of Title VII, 42 U.S.C. §§ 2000e-2 et seq., and on age, in violation of the ADEA, 29 U.S.C. § 633a. Plaintiff seeks an order declaring that his removal from his position as Director of OGM was unlawful discrimination based upon his age, race and/or sex; reinstatement to his position as Director of OGM retroactive to April 2003; compensatory damages in the amount of $300,000.00; an injunction against future acts of discrimination; back pay; and amendment of his records.

After completion of discovery, Defendant filed the instant Motion for Summary Judgment on November 6, 2006 [Dkt. No. 33], which Plaintiff opposed on November 22, 2006 [Dkt. No. 36]. Defendant filed a Reply on January 12, 2007 [Dkt. No. 47].

---

[3] The parties have provided no information regarding the outcome of the investigation, although Defendant's Motion states: "The agency acceptance letter informed plaintiff that if he failed to receive the investigative file and summary within 180 days of the date the complaint was filed, he had the right to request a hearing before the Equal Employment Opportunity Commission or to file a civil action in the appropriate U.S. District Court. Plaintiff filed this civil action on or about February 3, 2005." Def.'s Mot. at 7.

## II. STANDARD OF REVIEW

Summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits or declarations, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56. Material facts are those that "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The nonmoving party then must "go beyond the pleadings and by [its] own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Id. at 324.  See Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (nonmoving party has affirmative duty "to provide evidence that would permit a reasonable jury to find" in its favor); Crenshaw v. Georgetown Univ., 23 F. Supp. 2d 11, 15 (D.D.C. 1998) (noting that "adverse party must do more than simply 'show that there is some metaphysical doubt as to the material facts'" (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986))).

-7-

In deciding a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). See Washington Post Co. v. United States Dep't of Health and Human Servs., 865 F.2d 320, 325 (D.C. Cir. 1989). Ultimately, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

## III. ANALYSIS

### A. Summary Judgment Is Denied as to Plaintiff's Race and Age Discrimination Claims and Is Granted as to Plaintiff's Gender Discrimination Claim

#### 1. The Governing Standards

Title VII provides, in relevant part, that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "In the absence of direct evidence of discrimination, disparate treatment claims under Title VII are analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139, 1149

-8-

(D.C. Cir. 2004).  See <u>Lathram v. Snow</u>, 336 F.3d 1085, 1088 (D.C. Cir. 2003); <u>Brown v. Brody</u>, 199 F.3d 446, 452 (D.C. Cir. 1999).  In such cases, "[t]he <u>McDonnell Douglas</u> framework establishes 'an allocation of the burden of production and an order for the presentation of proof.'"  <u>Teneyck</u>, 365 F.3d at 1149 (<u>quoting</u> <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506 (1993)).

The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire . . . or otherwise discriminate against any individual [who is at least forty years old] because of such individual's age."  29 U.S.C. § 623(a)(1).  In this Circuit, ADEA discrimination claims are evaluated using the Title VII <u>McDonnell Douglas</u> framework.  <u>Hall v. Giant Food, Inc.</u>, 175 F.3d 1074, 1077 (D.C. Cir. 1999).

Under this framework, the plaintiff must first establish, by a preponderance of the evidence, a <u>prima</u> <u>facie</u> case of discrimination.  See <u>McDonnell Douglas</u>, 411 U.S. at 802.  "The burden of doing so is "'not onerous.'"  <u>Teneyck</u>, 365 F.3d at 1149 (<u>quoting</u> <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981)).  It is well-established that "a plaintiff makes out a <u>prima</u> <u>facie</u> case of disparate-treatment discrimination by establishing that: '(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.'"  <u>George v. Leavitt</u>, 407 F.3d 405, 412 (D.C. Cir. 2005) (internal citations

omitted).

If the plaintiff establishes a prima facie case, then the burden shifts to the defendant to "produce admissible evidence that, if believed, would establish that the employer's action was motivated by a legitimate, nondiscriminatory reason." Teneyck, 365 F.3d at 1151 (internal citation omitted). See McDonnell Douglas, 411 U.S. at 802; Aka v. Washington Hospital Center, 156 F.3d 1284, 1288 (D.C. Cir. 1998). "The employer's burden is one of production, not persuasion." Teneyck, 365 F.3d at 1151 (internal citation omitted).

If the employer satisfies this burden, "'the McDonnell Douglas framework – with its presumptions and burdens – disappear[s], and the sole remaining issue [i]s discrimination vel non.'" Teneyck, 365 F.3d at 1151 (quoting Reeves, 530 U.S. at 142-43). At this point, "a court reviewing summary judgment looks to whether a reasonable jury could infer intentional discrimination ... from all the evidence, including '(1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its action; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer).'" Carter v. George Washington Univ., 387 F.3d 872, 878 (D.C. Cir. 2004) (quoting Waterhouse v. Dist. of Columbia, 298 F.3d 989, 992-93 (D.C. Cir. 2002)).

### 1.    Plaintiff Suffered an Adverse Employment Action

Defendant has moved for summary judgment on Plaintiff's Title VII discrimination claims based on race and sex, and on his ADEA claim, on the ground that Plaintiff has failed to establish a prima facie case. Specifically, Defendant contends that Plaintiff has not suffered an adverse employment action and has merely raised a series of personnel grievances. Defendant also argues that Plaintiff has provided no evidence giving rise to an inference of discrimination. Defendant does not challenge the first element of Plaintiff's prima facie case.

To establish a prima facie case of discrimination under Title VII and the ADEA, a plaintiff must set forth facts demonstrating that he suffered an adverse employment action. Brown, 199 F.3d at 457. "[A]n employee suffers an adverse employment action if he experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." Forkkio v. Powell, 306 F.3d 1127, 1131 (D.C. Cir. 2002) (citing Brown, 199 F.3d at 457). "'[R]eassignment with significantly different responsibilities, or . . . a significant change in benefits' generally indicates an adverse action." Id. (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. at 724, 761 (1998)).

It is true, as Defendant points out, that not all employment

decisions constitute adverse employment actions under a Title VII claim.  An employment action "does not rise to the level of an actionable adverse action . . . unless there is a tangible change in the duties or working conditions constituting a material employment disadvantage."  Stewart v. Evans, 275 F.3d 1126, 1134 (D.C. Cir. 2003); see also Burlington Indus., 524 U.S. at 761 ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.").[4]

In this Circuit, adverse actions are those that result in "changes such as demotion, undesirable reassignment, or the loss of a bonus," but not those that impose "purely subjective harms, such as dissatisfaction or humiliation."  Velikonja v. Mueller, 315 F. Supp. 2d 66, 75 (D.D.C. 2004), citing Russell, 257 F.3d at 819, Forkkio, 306 F.3d at 1130-31.  Temporary changes or a decrease in the quality of responsibilities may constitute adverse action.  Holcomb v. Powell, 433 F.3d 889, 902-03 (D.C. Cir. 2006).  Our

---

[4] The D.C. Circuit has held that formal criticism and poor performance evaluations do not in themselves constitute adverse employment action that can support a claim under Title VII.  See Burton v. Batista, 339 F. Supp. 2d 97, 110-11 (D.D.C. 2004) (citing Brown, 199 F.3d at 458; Russell v. Principi, 257 F.3d 815, 819 (D.C. Cir. 2001); cf. Weigart v. Georgetown Univ., 120 F. Supp. 2d 1, 17 (D.D.C. 2000) (noting that unjustified criticism and poor performance evaluations may constitute adverse actions).  Similarly, "[b]eing closely supervised or 'watched' does not constitute an actionable adverse employment action that can support a claim under Title VII."  Burton, 339 F. Supp. 2d at 111.

Court of Appeals has also found there to be adverse action where the employer curtailed the employee's supervisory responsibilities. Burke v. Gould, 286 F.3d 513, 522 (D.C. Cir. 2002). An employee may suffer an adverse action even in the absence of "reduction in grade, pay or benefits." Holcomb, 433 F.3d at 902.

Plaintiff has presented evidence that he was reassigned to a Grants Management Officer position in which he had no supervisory authority and in which he lacked signature authority, i.e. the authority to grant awards, over the one grant he supervised. Pl.'s Opp'n. Ex. 9 ("Weeden Depo.") at 20-21. He has also presented evidence that the principal duty of a Grants Management Officer is to make grant awards. Because DHHS gave him no supervisory or signature authority, Plaintiff contends, he was unable to do his job effectively. Moreover, Plaintiff has presented evidence that an employee working on a grant who does not have signature authority is more accurately classified as a Grants Management Specialist, which is typically a GS-13 level. Id. at 13, 21. In short, Plaintiff "was removed from a position supervising 38 employees, including GS-15 managers, to a position where he did not supervise anyone and did not even have authority to authorize a grant." Pl's Opp'n at 17.

This evidence constitutes more than the "[m]ere idiosyncracies of personal preference" that our Court of Appeals found insufficient to survive summary judgment in Brown. 199 F.3d at

-13-

457.  Based on Plaintiff's evidence, a "reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm."   Id.

### 2. Plaintiff Has Provided Evidence Raising an Inference of Discrimination as to His Age and Race Discrimination Claims, But Not as to His Gender Discrimination Claim

Defendant further contends that Plaintiff's weak, "indirect evidence of discrimination," is insufficient to support the inference of discrimination required for Plaintiff's prima facie case.  Def.'s Reply at 4.

"A prima facie case requires evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion." Teneyck v. Omni Shoreham Hotel, 254 F. Supp. 2d 17, 22 (D.D.C. 2003), aff'd 365 F.3d 1139 (D.C. Cir. 2004).  A plaintiff has several methods of satisfying this requirement.  He may "demonstrat[e] that [he] was treated differently from similarly situated employees who are not part of the protected class." George, 407 F.3d at 412 (internal citations omitted).  In the case of a discharge claim, he may "show[] that the discharge was not attributable to the two analogous common legitimate reasons for discharge: performance below the employer's legitimate expectations or the elimination of the plaintiff's position altogether."  Id.[5]  As Defendant concedes, a plaintiff

---

[5] Defendant contends that "the plaintiff retains the ultimate burden of proof and must present substantial evidence of

need not demonstrate that he was replaced by a person outside his protected class in order to make out a prima facie case. See Def.'s Mot. at 12-13; Stella v. Mineta, 284 F.3d 135, 144-46 (D.C. Cir. 2002).

### a.   Age discrimination

Plaintiff has introduced evidence that Coy made several derogatory statements about Plaintiff's age.  He presents evidence that Coy told him he was "part of the older generation."  Pl.'s Opp'n Ex. 2 ("Bryant Aff.") at ¶ 15.  When Plaintiff's daughter was about to graduate from high school, Coy told him that he was "too old to have children in high school."  Pl.'s Opp'n Ex. 3 ("Lonergan Decl.") at ¶5; Pl.'s Opp'n Ex. 13 ("Coy Depo.") at 91 (admitting that he may have made this statement).  Plaintiff also claims that Coy complained about a secretary at the Agency "who was about 800 years old."  Bryant Aff. at ¶ 15.  In his deposition, Coy admitted that he believed the "older staff do need to improve their computer skills," and that "many senior managers lack computer skills."  Coy Depo. at 91-92;  Pl.'s Opp'n Ex. 12 ("Coy Aff.") at ¶ 17.

Defendant attempts to discount Coy's comments as "a poor attempt at levity."  Def.'s Reply at 3.[6]  Coy's intent in making

_____

discrimination in order to survive a motion for summary judgment." Def.'s Mot. at 10 (emphasis added), citing Green v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999).  This is not the standard, nor does Green provide support for such a standard.

[6] Defendant also points out that Plaintiff was replaced as Director of OGM by Carol Carter Walker, who was approximately the

these comments is a disputed material fact that is not appropriate for determination at the summary judgment stage. Based upon the evidence of age-based comments Plaintiff has introduced, the Court finds he has raised an inference of discrimination.

### b.   Race discrimination

Plaintiff has also introduced evidence raising an inference of race discrimination. Specifically, Plaintiff proffers evidence that Coy treated him "like a child" and yelled at him, but did not subject the white employees in the office to similar treatment. Pl.'s Opp'n Ex. 1 ("Rogers Decl.") at ¶ 3 ("I observed Curtis Coy, on a regular basis, talk to Dr. Bryant like he was reprimanding a child. His tone was different with Dr. Bryant than with the white people in our office. The only other person I heard him holler at was Blair Hayes, whom he also talked to like a child. Mr. Hayes is African-American. Curtis Coy did not holler at white employees."); Pl.'s Opp'n Ex. 4 ("Morgan Decl.") at ¶ 7 (testifying that she observed Coy "demean and belittle Maiso Bryant").

Plaintiff has introduced evidence that he was berated for the mistakes of at least one white employee, Joel Anthony. When there was a problem with the announcement of a new departmental program,

---

same age as Plaintiff. As indicated above, however, Defendant has conceded that Plaintiff need not show he was replaced by an employee outside of the protected class. This principle applies in both the Title VII and the ADEA context. <u>See</u> <u>Stella</u>, 284 F.3d at 144-46; <u>O'Connor v. Consolidated Coin Caterers Corp.</u>, 517 U.S. 308, 312 (1996).

Coy blamed Plaintiff and reprimanded him but did not reprimand Anthony, who was actually responsible for the announcement. Morgan Decl. at ¶ 7, Pl.'s Opp'n Ex. 10 ("Anthony Depo.") at 46-47. Plaintiff has also introduced evidence that Coy conferred with Anthony for advice and information on grants management issues, though these issues fall within the purview of Plaintiff's responsibilities, not Anthony's. Bryant Aff. at ¶ 13, Morgan Decl. at ¶ 5. Coy also allocated additional staff to Anthony, and refused to allocate any to Plaintiff, despite his requests. Bryant Aff. at ¶ 13.

Accordingly, the Court finds that Plaintiff has offered evidence that he was treated differently than similarly situated white employees, and that other African-American employees were treated in a demeaning manner. This evidence is sufficient to satisfy the "inference of discrimination" requirement under George v. Leavitt. 407 F.3d at 412 (A plaintiff can satisfy the inference of discrimination requirement "by demonstrating that she was treated differently from similarly situated employees who are not part of the protected class.").

### c.   Gender discrimination

In this Circuit, a plaintiff alleging a reverse discrimination claim must demonstrate "additional 'background circumstances [that] support the suspicion that the defendant is that unusual employer who discriminates against the majority.'" Harding v. Gray, 9 F.3d

150, 153 (D.C. Cir. 1993) (quoting Parker v. Baltimore & Ohio R.R., 652 F.2d 1012, 1017 (D.C. Cir. 1981)). Our Court of Appeals has not expressly discussed application of this modified prima facie case standard to gender discrimination against male employees, although several district court cases have. See Horvath v. Thompson, 329 F. Supp. 2d 1, 10 (D.D.C. 2004) (quoting Harding v. Gray, 9 F.3d 150, 153 (D. C. Cir. 1993)); Bell v. Runyon, 1997 U.S. Dist. LEXIS 10909, at *4 (D.D.C. July 17, 1997) (a male plaintiff, as a "member of the historically favored group" must "present[] evidence of 'background circumstances' that could support an inference of discrimination"). See also Woods v. Perry, 375 F.3d 671, 673 (8th Cir. 2004) (applying "background circumstances" test to male plaintiff's claim of gender discrimination); Mills v. Health Care Serv. Corp., 171 F.3d 450, 456-57 (7th Cir. 1999) (same); Notari v. Denver Water Dep't, 971 F.2d 585, 589 (10th Cir. 1992) (same).

Plaintiff in this case has presented no evidence of "background circumstances" supporting a suspicion that Defendant discriminates against male employees. Neither party addresses whether the fact that Plaintiff is a man is significant for purposes of Title VII. Even under the unmodified McDonnell Douglas standard, however, Plaintiff has not presented evidence such that a reasonable jury could find he was discriminated against based on gender in the face of Defendant's legitimate,

nondiscriminatory reasons, discussed _infra_.  His only evidence of gender discrimination is that he was replaced as Director of OGM by a female, Carol Carter Walker, and that she received additional staffing for the office after his removal.  Bryant Aff. ¶ 13. Moreover, as Plaintiff admits, Coy provided an additional employee to Joel Anthony, which is contrary to any inference of gender discrimination.

The Court finds that this evidence is insufficient to raise an inference of gender discrimination under either test.  Accordingly, summary judgment must be granted as to this claim.

### 2.   There Are Material Facts in Dispute as to Whether Defendant's Proffered Reasons Are a Pretext for Discrimination

In response to Plaintiff's _prima_ _facie_ case, Defendant has offered admissible evidence that its decision to demote Plaintiff was based on legitimate, nondiscriminatory reasons.  _See_ _Burdine_, 450 U.S. at 257.  Defendant contends that Coy removed Plaintiff from his position because he "lost confidence in plaintiff's ability to direct the Office of Grants Management."  Def's Mot. at 20.  Coy's affidavit bases his decision on Plaintiff's problems with "timeliness, quality of work, management of the office" and his general lack of confidence in Plaintiff's explanations for his deficiencies in these areas.  Coy Aff. at ¶ 10.

Once a defendant has offered such evidence, the inference of discrimination disappears and the plaintiff must introduce evidence

such that a reasonable trier of fact could conclude that the employer's rationale is, in fact, a pretext.   A plaintiff may satisfy this burden in several ways.   He "is not limited to challenging the employer's explanation, but can also avoid summary judgment (and prevail at trial) by presenting other evidence, either direct or circumstantial, that permits an inference of discrimination." Aka, 156 F.3d at 1295 n.11.

Our Court of Appeals has articulated the pretext analysis as follows:

> Assuming then that the employer has met its burden of producing a nondiscriminatory reason for its actions, the focus of proceedings at trial (and at summary judgment) will be on whether the jury could infer discrimination from the combination of (1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer) or any contrary evidence that may be available to the employer (such as evidence of a strong track record in equal opportunity employment).

Brown, 199 F.3d at 458 (citing Aka, 156 F.3d at 1289).

In Reeves, 530 U.S. at 147-48, the Supreme Court found that a court could infer discriminatory intent from the fact that the employer's reason was disbelieved.   Even though the presumption of discrimination dropped out once the defendant articulated a non-discriminatory reason for its action, a permissive inference of discrimination remained.   Id.   Accordingly, a plaintiff may show intentional discrimination simply by proving a prima facie case,

and that the defendant's "explanation is unworthy of credence."
Id. at 143.

In an attempt to demonstrate that Defendant's explanations are
not believable, Plaintiff argues that "Defendant proffers no
evidence to suggest that [Plaintiff] was providing insufficient
management.   To the contrary, [Plaintiff] had been rated
'Outstanding' for his performance."  Pl.'s Opp'n at 21.  He also
provides evidence calling into question the few examples Defendant
provides in support of its explanation.

One explanation Defendant offers in support of the demotion is
a problem with submitting certain letters to Compassion Capital
program grantees.  As Plaintiff points out, however, he was only
transferred to the Capital Compassion Fund Program after he was
removed from his position as Director of OGM.  Because this problem
arose after Plaintiff was demoted, he argues that it is not a
credible explanation for the demotion.  Id. at 11-12.

Defendant also claims that Plaintiff allowed a large backlog
of Freedom of Information Act (FOIA) requests to develop during his
term as Director of OGM.  Plaintiff has presented the testimony of
the person who was Director of Discretionary Grants during his term
stating that there was no such backlog.  Id. at 12.

Aside from these examples, Defendant proffers Coy's subjective
impressions of Plaintiff's performance as the rationale for the
demotion.  Def.'s Mot at 20 (citing Coy Aff. at ¶ 6-8, 10 (stating

-21-

that Coy "lost confidence in plaintiff's ability to direct the Office of Grants Management," Coy "decided to make a leadership change at OGM" and "did not believe that plaintiff was up to the task and that a change was appropriate.")).   While "employers may of course take subjective considerations into account in their employment decisions, courts traditionally treat explanations that rely heavily on subjective considerations with caution."  Aka, 156 F.3d at 1298.

Based on the evidence Plaintiff has presented, a reasonable juror could conclude that Defendant's subjective, nondiscriminatory reasons for Plaintiff's demotion were pretextual.   Considered together with the evidence comprising Plaintiff's prima facie case, a reasonable juror could infer race and age discrimination. See Reeves, 530 U.S. at 147-48; Carter, 387 F.3d at 878.

Accordingly, Defendant is not entitled to summary judgment on Plaintiff's race and age discrimination claims.

**B.   Summary Judgment Is Granted on the Hostile Work Environment Claim Because Defendant's Motion Is Deemed Conceded and Because Plaintiff Has Not Provided Evidence to Show His Work Environment Was Hostile**

Defendant argues that Plaintiff has failed to make out a prima facie case of harassment or hostile work environment because he cannot establish that he suffered "severe and pervasive" harassment.   Def.'s Mot. at 20.

Plaintiff's Opposition does not address this argument, and, in his Amended Complaint, he has removed his request that the Court

declare that Defendant created a hostile work environment.[7]
Because Plaintiff is deemed to have conceded Defendant's arguments
as to the hostile work environment claim, summary judgment must be
entered in Defendant's favor.  LCvR 7(b); see United States v. Real
Property Identified As: Parcel 03179-005R, 287 F. Supp. 2d 45, 61
(D.D.C. 2003) ("If the opposing party files a responsive
memorandum, but fails to address certain arguments made by the
moving party, the court may treat those arguments as conceded.")
(internal citation omitted).

Moreover, Plaintiff's evidence is nowhere near the showing
required for a hostile work environment claim.  To establish a
prima facie case of hostile work environment, plaintiff must
demonstrate that: (1) he is a member of a protected class; (2) he
was subject to unwelcome harassment; (3) the harassment occurred
because of his race, gender, age, or disability; (4) the harassment
affected a term, condition or privilege of employment; and (5) the
employer knew or should have known of the harassment, but failed to
take any action to prevent it.  See Jones v. Billington, 12 F.
Supp. 2d 1, 11 (D.D.C. 1997), aff'd 1998 WL 389101 (D.C. Cir. June
30, 1998).

--------

[7] The Court notes that Defendant raised the same arguments in
its Motion to Dismiss or for Summary Judgment [Dkt. No. 10]
regarding the hostile work environment claim in Plaintiff's
original Complaint.  Though Defendant subsequently withdrew the
Motion to Dismiss as premature, it is significant that Plaintiff
has been on notice of this argument since July 21, 2005, the date
that Motion was filed, and has not addressed it.

The workplace environment becomes "hostile" for purposes of Title VII only when the offensive conduct "permeates [the workplace] with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998). These standards ensure that Title VII does not become a "general civility code," and are intended to filter out complaints attacking "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." Faragher v. Boca Raton, 524 U.S. 775, 787 (1998).

Here, Plaintiff has offered evidence that he was subject to harassment when Coy reprimanded and criticized him, made unwelcome comments about his age, and singled him out for close scrutiny by management. These discrete acts of alleged discrimination and retaliation simply do not rise to the level of severity and pervasiveness necessary to maintain a hostile work environment claim.

Accordingly, Defendant is entitled to summary judgment on the hostile work environment claim.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [Dkt. No. 33] is **granted in part** and **denied in part**. The following claims remain in this case: employment discrimination

based on race in violation of Title VII, and employment discrimination based on age, in violation of the ADEA.

An Order will issue with this Memorandum Opinion.


February 22, 2007

/s/
Gladys Kessler
United States District Judge


**Copies to**: **attorneys on record via ECF**